UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                :
IN RE:                                          :           22-CV-2556 (JMF)
                                                :
LATAM AIRLINES GROUP S.A.                       :           OPINION AND ORDER
                                                :
-------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

     These consolidated cases arise out of Chapter 11 bankruptcy proceedings initiated by

LATAM Airlines Group S.A. and its affiliates (collectively, "LATAM") in the United States

Bankruptcy Court for the Southern District of New York.  A subset of stakeholders in those

proceedings — Banco del Estado de Chile, the Official Committee of Unsecured Creditors of

LATAM, the Ad Hoc Group of Unsecured Claimants, and Columbus Hill Capital Management

L.P. (collectively, "Appellants") — appeal from a memorandum decision and order of the

Bankruptcy Court approving LATAM's request for approval to enter into two post-petition

agreements, pursuant to which a group of creditors and a group of shareholders agreed to

backstop and otherwise support LATAM's proposed Plan in exchange for $734 million in fees

and other benefits (the "Backstop Agreements").  Entering into those agreements was an interim

step toward confirmation of LATAM's proposed Chapter 11 reorganization plan, under which

LATAM plans to raise over $8 billion in order to emerge from bankruptcy.  Confirmation of

LATAM's reorganization plan remains pending below; a confirmation hearing is scheduled for

May 17 and 18, 2022.  LATAM now moves to dismiss the appeal for lack of jurisdiction.  *See*

ECF No. 12.  In particular, LATAM argues that the Bankruptcy Court's order was not final

within the meaning of 28 U.S.C. § 158(a)(1) and that Appellants have failed to demonstrate that

the Court should exercise its discretion to grant leave to appeal under 28 U.S.C. § 158(a)(3).  *See*

ECF No. 13 ("LATAM's Mem.").  For the reasons that follow, the Court agrees, and LATAM's motion to dismiss is thus GRANTED.

## BACKGROUND

The following facts are taken from the record in the underlying bankruptcy case and are undisputed.  *See In re Empire Generating Co, LLC*, No. 19-CV-5721 (CS), 2020 WL 1330285, at *1 (S.D.N.Y. Mar. 23, 2020).

### A.  The Initial Bankruptcy Proceedings and the Proposed Reorganization Plan

On May 26, 2020, LATAM — the leading passenger airlines group in Latin America — initiated Chapter 11 Bankruptcy proceedings.  ECF No. 27-1 ("Bankr. Op."), at 8.[1]  About eighteen months later, following mediation, LATAM reached an agreement on a restructuring plan to bring LATAM out of bankruptcy with two subsets of creditors: an ad hoc group of creditors of LATAM's parent entity (LATAM Airlines Group S.A. not including its affiliates or "LATAM Parent"), who together control more than 70% of the amount of general unsecured claims asserted against LATAM Parent (the "Commitment Creditors"); and a group of shareholders, who together control more than 51% of LATAM Parent's common stock (the "RSA Shareholders").  *Id.* at 4.  That agreement was memorialized in a Restructuring Support Agreement, two Backstop Agreements, and a proposed reorganization plan (the "Plan"), which was filed with the Bankruptcy Court by the Debtors on November 26, 2021.  *See* LATAM's Mem. 3-4; Bankr. Op. 4-6, 13; *In re LATAM Airlines Group. S.A.*, 20-11254 (JLG) ("BR ECF"),

---

[1]      On July 7 and 9, 2020, additional LATAM affiliates filed subsequent Chapter 11 proceedings.  *See* Bankr. Op. 8-9.  The cases are administered jointly for procedural purposes. *See id.* at 9.

ECF Nos. 3666, 3667 (Bankr. S.D.N.Y. Nov. 26, 2021).[2]  The Plan and Restructuring Support
Agreement call for LATAM to raise more than $8 billion to pay off a subset of claims and to
finance LATAM's ongoing operations and capital needs following its emergence from the
Chapter 11 cases.  Bankr. Op. 4-5.  LATAM plans to raise the bulk of those funds through rights
and notes offerings, which require the approval of a majority of LATAM Parent's shareholders.
*See id.* at 5.  Pursuant to the Plan and Restructuring Support Agreement, the RSA Shareholders
will consent to the offerings, and the Commitment Creditors and a subset of the RSA
Shareholders commit to backstop a total of $5.4 billion of those offerings.  *Id.*  The backstop
components of the Plan were set out separately in two agreements (known as the Backstop
Agreements) with the Commitment Creditors and a subset of the RSA Shareholders,
respectively.  *Id.* at 5-6.

**B.  The Backstop Agreements**

At a high level, the Backstop Agreements provide that, in exchange for the Commitment
Creditors' and RSA Shareholders' backstop commitments and support for the proposed Plan,
LATAM will pay the Commitment Creditors approximately $734 million in fees and provide
expense reimbursement and indemnification benefits to both the Commitment Creditors and the
RSA Shareholders.  *Id.*  The substantive provisions of the Backstop Agreements are summarized
at length in the Bankruptcy Court's opinion, *see id.* at 19-25, and, thus, need not be described in
full here.  Five provisions, however, bear particular relevance to the instant motion.

**Backstop Commitment.**  The Commitment Creditors commit to backstop LATAM's
proposed Unsubscribed New Convertible Notes Class C up to approximately $6.8 billion

---

[2]     LATAM filed revised versions of the Plan on December 17, 2021, December 20, 2021,
and February 28, 2022.  *See* Bankr. Op. 13 n.19.

(consisting of approximately $3.3 billion in cash and the rest in parent general unsecured claims) and Unsubscribed ERO New Common Stock up to $400 million. *Id.* at 20 (citing ECF No. 27-2, at 13-142 ("CC Backstop Agreement"), § 2.2(a)-(b)). Similarly, the RSA Shareholders agree to backstop LATAM's proposed Unsubscribed New Convertible Notes Class B up to approximately $1.4 billion and Unsubscribed ERO New Common Stock up to $400 million. *Id.* at 22 (citing ECF No. 27-2, at 143-244 ("RSA Shareholders Backstop Agreement"), § 2.2).

**Backstop Payment.** In exchange, LATAM agrees to make payments to the Commitment Creditors totaling approximately $734 million (in aggregate, 20% of the sum of the $3.3 billion cash backstop commitment for Unsubscribed New Convertible Notes Class C and the $400 million backstop commitment for Unsubscribed ERO New Common Stock). *Id.* at 5, 20-21 (citing CC Backstop Agreement § 3.1(a)). These payments are "fully earned, nonrefundable and non-avoidable upon entry by the Bankruptcy Court of" the order approving LATAM's entry into the Backstop Agreements (the "Backstop Order"), but are payable only on the Closing Date, *id.*; *see also* CC Backstop Agreement § 3.2(a), which is defined as the date on which all of the conditions precedent outlined below — including confirmation of the Plan, *id.* § 7.3(d) — "shall have been satisfied or waived," *id.* § 2.5(a). Significantly, however, if the Agreement is terminated before the Backstop Payment becomes payable, LATAM is still required to pay a "Termination Payment." Bankr. Op. 22 (citing CC Backstop Agreement §§ 9.1, 9.2). That payment would be due regardless of whether the Plan is ultimately confirmed — although the amount of the Termination Payment (something between 10% to 50% of the Backstop Payment) turns on whether termination occurs before or after confirmation. *See id.*; CC Backstop Agreement § 9.2(b). Under the RSA Shareholders Backstop Agreement, by contrast, LATAM is

4

not required to pay any Backstop Payment (or any Termination Payment) to the RSA Shareholders.  Bankr. Op. 22.

**Expense Reimbursements.**  Under both Backstop Agreements, LATAM "agree[s] to pay the reasonable and documented fees, expenses, disbursements and other costs . . . incurred by each of the Backstop Parties in connection with the Chapter 11 Cases."  *Id.* at 21, 22 (citing CC Backstop Agreement § 3.3; RSA Shareholders Backstop Agreement § 3.1).  For the Commitment Creditors these Expense Reimbursements are capped at an aggregate of $3 million, *id.* at 21; for the RSA Shareholders, there is no cap, *id.* at 22.  Both Backstop Agreements provide that "[t]he Expense Reimbursement accrued and invoiced through the date on which the Backstop Order is entered shall be paid in full in cash as soon as practicable thereafter, and in any event within one (1) Business Day thereof," and additional Expense Reimbursements shall be paid in cash through the Effective Date (defined below) within ten days of receiving an invoice.  CC Backstop Agreement § 3.3; RSA Shareholders Backstop Agreement § 3.1.

**Indemnification Obligations.**  LATAM also undertakes indemnification obligations to each Backstop Party from and against "losses, claims, damages, liabilities and costs and expenses imposed by any Chilean Government Entity subject arising out of or in connection with [the Backstop Agreements], the Plan and the transactions contemplated under [them]."  Bankr. Op. 21-23 (citing CC Backstop Agreement § 8.1; RSA Shareholders Backstop Agreement Art. VIII).  This applies to both the Commitment Creditors and the RSA Shareholders.  *See id.*

**Conditions Precedent.**  The obligations of LATAM, the Commitment Creditors, and RSA Shareholders "to consummate the transactions contemplated" in the Backstop Agreements are subject to a number of conditions precedent.  CC Backstop Agreement §§ 7.1, 7.3; RSA Shareholders Agreement §§ 7.1, 7.3.  Among others, the "Effective Date shall have occurred, or

shall be deemed to have occurred concurrently with the Closing, as applicable, in accordance with the terms and conditions in the Plan and in the Confirmation Order."  CC Backstop Agreement §§ 7.1(c), 7.3(a); RSA Shareholders Agreement §§ 7.1(c), 7.3(a); *see also* Bankr. Op. 21, 23.  Under both Backstop Agreements, the Effective Date is "the date of substantial consummation of the Plan, which shall be the first (1st) Business Day upon which all conditions precedent to the effectiveness of the Plan, are satisfied or waived with the consent of the Requisite Backstop Parties in accordance with the Plan."  CC Backstop Agreement § 1.1; RSA Shareholders Agreement § 1.1.

## C.  The Backstop Motion and Proceedings

On January 12, 2022, LATAM moved for the Bankruptcy Court to approve LATAM's entry into and performance of the Backstop Agreements, pursuant to Bankruptcy Code Sections 105(a), 363(b), 503(b)(1), and 507(a)(2).  *See* LATAM's Mem. 5; Bankr. Op. 6.  Section 105(a) of the Bankruptcy Code empowers federal bankruptcy courts to issue "any order . . . that is necessary or appropriate to carry out the provisions of th[e] title."  11 U.S.C. § 105(a).  Section 363(b) governs the use, sale, or lease of property of the estate "other than in the ordinary course of business."  *Id.* § 363(b)(1); *see also* 3 Collier on Bankruptcy ¶ 363.01 (16th ed. 2022).  And Section 503(b)(1) provides for the allowance of administrative expenses, 11 U.S.C. § 503(b)(1), which, under Section 507(a)(2) are designated as having "second[-level]" priority in distribution of the assets of the estate, *id.* § 507(a)(2); *see also* 4 Collier on Bankruptcy ¶ 503.01.  LATAM sought the Bankruptcy Court's approval of the Backstop Agreements under these provisions because the Agreements would require LATAM to make payments out of the property of the estate outside of the ordinary course of LATAM's business and called for some of those payments to be designated as administrative expenses.  *See* Bankr. Op. 84 ("The Motion seeks

approval of a post-petition transaction that is outside the ordinary course of [LATAM's] business," which "is governed by sections 363 and 503."); *id.* (noting that LATAM also contends "the Court should allow [the] fees and expenses under the Backstop Agreements as administrative expenses").

Appellants filed objections to the motion based on Sections 363, 503, and 507, as well as provisions of Chapter 11 of the Bankruptcy Code — most notably, Sections 1123(a)(4) and 1129(a)(4).  *See* Bankr. Op. 7, 28-30.  To the extent relevant here, Section 1123(a)(4) requires a Chapter 11 reorganization plan to provide the same treatment for each claim or interest within a particular class.  11 U.S.C. § 1123(a)(4); *see also* 7 Collier on Bankruptcy ¶ 1123.01[4].  Section 1129(a)(4) requires that a bankruptcy court approve as "reasonable" "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan" in order to confirm the plan, 11 U.S.C. § 1129(a)(4).  Appellants contended, among other things, that the Bankruptcy Court should apply the standards applicable under Sections 1123(a)(4) and 1129(a)(4) in determining whether to approve the Backstop Agreements. *See* Bankr. Op. 29, 83.  After permitting discovery, the Bankruptcy Court conducted a two-day evidentiary hearing, for which notice was served on the relevant parties.  *See* ECF No. 26 ("Appellants' Opp'n"), at 5; Bankr. Op. 8.

## D.  The Backstop Decision and Order

On March 15, 2022, the Bankruptcy Court issued the decision challenged here.  *See* Bankr. Op.  It granted the motion, *id.* at 85, and issued an order authorizing LATAM's entry into and performance of the Backstop Agreements, ECF No. 27-2, at 2-10 ("Backstop Order").  In its Memorandum Decision, the court applied the "business judgment rule" under Section 363 to determine whether it should approve LATAM's proposed use of the property of the estate

outside of the ordinary course of its business pursuant to the Backstop Agreements, Bankr. Op.
76-77, and concluded that LATAM had satisfied the applicable standard, *id.* at 81.  The court
then turned to the Section 503(b) analysis regarding administrative expenses.  *Id.* at 82-83.  It
held that the components of the Backstop Agreements that require LATAM to pay "fees and
expenses" and undertake "indemnification obligations associated with the negotiation and
execution of [the] backstop purchase agreements" were permissible administrative expenses
under Section 503(b)(1)(A) because they meet the statutory standard for "actual, necessary costs
and expenses of preserving the estate." *Id.* at 82.  With respect to the Chapter 11 objections
raised by Appellants here, the Bankruptcy Court concluded that the Chapter 11 provisions
regarding requirements for plan confirmation cited by Appellants were "not relevant to the
Motion," but would be relevant to confirmation of the Plan. *Id.* at 83-84; *see also id.* at 28-29.
The court also explicitly noted that Appellants' objections under Sections 1123(a)(4) and
1129(a)(11) (the latter on the ground that the Backstop payments violate Chilean law) were
"premature, as they must await the Plan confirmation hearing." *Id.* at 29.  The court therefore
"overrule[d] the objections, without prejudice to th[e] parties' rights to assert [them] in
connection with the Plan confirmation hearing." *Id.*

The Backstop Order reiterates the key findings of the Memorandum Decision, Backstop
Order ¶¶ A-H, and grants the requested relief, *id.* ¶¶ 1-14.  In particular, it provides that "[t]he
Backstop Agreements and the terms and provisions included therein are approved in their
entirety" and "[u]pon execution of the applicable Backstop Agreement, such Backstop
Agreement shall be binding and enforceable against the parties thereto in accordance with its
terms." *Id.* ¶ 2.  Like the Memorandum Decision, the Order also explicitly reserves judgment on
Chapter 11 issues raised by Appellants.  It provides that "[t]he Backstop Payments, the Expense

Reimbursement . . . , and the Backstop Indemnification Obligations are hereby approved as reasonable and appropriate to compensate the Backstop Commitment Parties for their obligations under the applicable Backstop Agreement; *provided*, *however*, as set forth . . . [in] the Memorandum Decision, the [Section 1123(a)(4) and 1129(a)(11) objections] are overruled without prejudice to [the relevant objectors'] rights to assert [them] in connection with Plan confirmation."  Backstop Order ¶ 4; *see also id.* ¶ E (including the same caveat in the relevant findings section).

Additionally, the Order modifies the automatic stay under Bankruptcy Code Section 362. *See* 11 U.S.C. § 362(a) (providing that the filing of a petition for bankruptcy automatically "operates as a stay" of creditors' debt-collection efforts outside the bankruptcy case). Specifically, the Order modifies the stay  "to the extent necessary to enable each of the Backstop Commitment Parties to perform under the applicable Backstop Agreement and, in each case, to exercise any and all of their contractual rights thereunder, without seeking further relief from the automatic stay."  *Id.* ¶ 7.  That section of the Order also prohibits "the Debtors [or] any other party in interest [from] enforc[ing] the automatic stay against the Backstop Commitment Parties or against any Indemnified Person under the Backstop Indemnification Obligations contained within the Backstop Agreements with respect to any and all such contractual rights."  *Id.*  The Order provides that it "shall be immediately effective, enforceable and binding upon its entry upon all parties-in-interest in the Chapter 11 Cases," and the court "retain[ed] jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of th[e] Order."  *Id.* ¶¶ 13-14.

### E.  The Upcoming Confirmation Hearing

The Bankruptcy Court has scheduled a confirmation hearing for LATAM's proposed Plan on May 17 and 18, 2022.  *See* ECF No. 6, at 11.  In advance of that hearing, on April 29, 2022, Appellant Columbus Hill filed its objection to confirmation of the Plan with the Bankruptcy Court.  *See* BR ECF No. 5177.  And, on May 2, 2022, the remaining three Appellants — Banco del Estado de Chile, the Official Committee of Unsecured Creditors of LATAM, and the Ad Hoc Group of Unsecured Claimants — filed their objections.  *See* BR ECF Nos. 5195, 5202, 5207; ECF Nos. 44-1, 44-2, 44-3.

**APPLICABLE LEGAL STANDARDS**

This Court's jurisdiction to hear appeals from the Bankruptcy Court is established by 28 U.S.C. § 158(a).  To the extent relevant here, it provides for jurisdiction over appeals "from final judgments, orders, and decrees," 28 U.S.C. § 158(a)(1), and, "with leave of the court, from . . . interlocutory orders and decrees," *id.* § 158(a)(3); *accord In re MF Glob. Holdings, Ltd.*, No. 12-CV-3757 (JMF), 2012 WL 4763087, at *1 (S.D.N.Y. Oct. 5, 2012), *aff'd sub nom. Sapere Wealth Mgmt. LLC v. MF Glob. Holdings Ltd.*, 546 F. App'x 56 (2d Cir. 2013) (summary order).

In general, "[o]rders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)); *accord In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012).  This standard "is more flexible than in other civil litigation," *In re Lehman Bros. Holdings Inc.*, 697 F.3d 74, 77 (2d Cir. 2012), in large part because it is "common for bankruptcy courts to resolve discrete controversies definitively while the umbrella bankruptcy case remains pending," *Ritzen*, 140 S. Ct. at 586-87.  The distinction is also rooted in the text of Section 158(a), which provides for "an appeal of

10

right . . . from 'final judgments, orders, and decrees' entered by bankruptcy courts 'in cases and *proceedings*'" as opposed to just "cases." *Id.* (emphasis added) (quoting 28 U.S.C. § 158(a)); *cf.* 28 U.S.C. § 1291.

Importantly, for purposes of finality in this context, a "'discrete dispute[]' . . . 'do[es] not mean merely competing contentions with respect to separable issues.'" *In re MSR Resort Golf Course LLC*, No. 14-CV-9491 (JMF), 2015 WL 5172956, at *1 (S.D.N.Y. Sept. 3, 2015) (quoting *In re Fugazy Express*, 982 F.2d 769, 775 (2d Cir. 1992)).  Instead, the Bankruptcy Court must have "completely resolve[d] all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Sletteland v. Orndorff*, 2 F. App'x 225, 228 (2d Cir. 2001) (summary order); *accord In re Gutierrez*, No. 19-CV-10897 (LTS), 2020 WL 2216557, at *1 (S.D.N.Y. May 7, 2020).  On the whole, finality in the bankruptcy context "is viewed functionally, focusing on pragmatic considerations rather than on technicalities." *In re Lehman Bros. Holdings Inc.*, 697 F.3d at 77.  And the "general aversion to piecemeal appeals" guides the finality inquiry even in the bankruptcy context. *In re Chateaugay Corp.,* 922 F.2d 86, 90 (2d Cir. 1990); *see also Bullard*, 575 U.S. at 501.

In the absence of a final order, a party appealing must file a motion for leave to appeal pursuant to Rules 8001 and 8003 of the Federal Rules of Bankruptcy Procedure.  If a motion for leave to appeal is required, but not filed, the district court may direct that a motion for leave to appeal be filed or treat the notice of appeal itself as a motion for leave to appeal and either grant or deny such leave. *In re MF Glob. Holdings, Ltd.*, 2012 WL 4763087, at *3 (citing Fed. R. Bankr. P. 8003(c)).  A district court "has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court" pursuant to 28 U.S.C. § 158(a)(3). *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003).  Neither the Bankruptcy Code nor the Rules of Procedure

provide standards for guiding that discretion.  *See, e.g.*, *In re Liddle & Robinson, L.L.P.*, No. 20-CV-865 (ER), 2020 WL 4194542, at *4 (S.D.N.Y. July 21, 2020).  In the absence of such standards, the majority of "district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal . . . , set forth in 28 U.S.C. § 1292(b)."  *Id.*; *accord In re MF Glob. Holdings, Ltd.*, 2012 WL 4763087, at *3; *United States v. Bond*, 09-CV-1824 (SLT), 2009 WL 3254472, at *3 (E.D.N.Y. Oct. 9, 2009) (collecting cases).  Under Section 1292(b), leave to appeal should be granted only if the relevant order (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

## DISCUSSION

LATAM argues this Court lacks jurisdiction over the consolidated appeals because (1) the Bankruptcy Court's order was not final within the meaning of 28 U.S.C. § 158(a)(1); and (2) Appellants have failed to demonstrate that the Court should exercise its discretion to grant leave to appeal under 28 U.S.C. § 158(a)(3).[3]  The Court will address each argument in turn.

### A.  Finality of the Backstop Order

The Court begins with the threshold question of whether the Backstop Order is "final" for purposes of Section 158(a)(1).  LATAM argues it is not because the issues addressed by the Backstop Order are "intertwined with and directly concern" confirmation of LATAM's proposed

---

[3]     LATAM also argues that the collateral order doctrine does not apply.  *See* LATAM's Mem. 11-14.  Appellants, however, do not dispute the point and, thus, have waived any argument to the contrary for the purposes of this motion.  *See, e.g.*, *Fieldcamp v. City of New York*, 242 F. Supp. 2d 388, 391 (S.D.N.Y. 2003) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue." (quoting *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997)).

Plan, which remains pending.  ECF No. 31 ("LATAM's Reply"), at 5-6 (cleaned up).  Thus, LATAM contends, it cannot be said that the Backstop Order conclusively resolved a discrete dispute within the overall case.  *Id.* at 5-7; *see also* LATAM Mem. 8-10.

Although the question is a close one, the Court agrees for three interrelated reasons. First, the Backstop Order did not resolve a "discrete dispute[] within the overarching bankruptcy case." *Ritzen*, 140 S. Ct. at 586.  As Appellants themselves concede, the Bankruptcy Court's approval of the Backstop Agreements was an interim step towards confirmation of LATAM's proposed reorganization Plan.  *See* Appellants' Opp'n 1; Bankr. Op. 25.  Approval enabled LATAM to (1) attain the Backstop Parties' "support for [LATAM's] proposed Chapter 11 plan," Appellants' Opp'n 1; *see also* Bankr. Op. 4-6, 25-26; and (2) secure backstop commitments for over $5.4 billion of the "$8 billion in new money" needed "to satisfy the Plan's cash payment obligations and to finance [LATAM's] ongoing operations and capital needs following [its] emergence from the Chapter 11 Cases," Bankr. Op. 25.  Without these commitments, confirmation of the Plan could not proceed.  *See id.*  And, conversely, without confirmation of the Plan, most of the substantive commitments laid out in the Backstop Agreements will never become effective.  *See* CC Backstop Agreement §§ 7.1(a), 7.1(c), 7.3(d); RSA Shareholders Backstop Agreement §§ 7.1(a), 7.1(c), 7.3(d); *see also* Bankr. Op. 21, 23; LATAM's Mem. 9-10. Indeed, the Backstop Parties will become obligated to make good on their Backstop Commitments only after confirmation of the Plan, and the amount LATAM will owe in Backstop Payment fees will likewise depend on Plan confirmation.  *See* CC Backstop Agreement §§ 3.2(a), 7.1, 7.3; RSA Shareholders Backstop Agreement §§ 7.1, 7.3; *see also* Appellants' Opp'n 6 (acknowledging that "[w]hether or not the Plan is confirmed . . . affects the *amount* that must be paid" by LATAM).  These interdependencies between the Backstop Agreements and

confirmation of the Plan make plain that the Backstop Order did not resolve a "discrete dispute[]" within the overarching bankruptcy case." *Ritzen*, 140 S. Ct. at 586.   Instead, it resolved disputes that were "intertwined with and directly concern[]" confirmation of LATAM's proposed Plan, which remains pending. *In re Energy Future Holdings Corp.*, 949 F.3d 806, 817-18 (3d Cir. 2020).

In fact, Appellants' own arguments on the merits demonstrate that the issues addressed by the Backstop Order are part of, and not discrete from, the Chapter 11 Plan confirmation disputes.   For instance, one of the primary arguments Appellants raised below in opposing the Backstop Motion relied on Section 1129(a)(4) of the Bankruptcy Code.   *See* Bankr. Op. 83-84. That Section requires that, before confirming a Chapter 11 reorganization plan, a court must approve as "reasonable" "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan."   11 U.S.C. § 1129(a)(4). Below, some Appellants (namely, the Official Committee of Unsecured Creditors of LATAM and the Ad Hoc Group of Unsecured Claimants made this argument, *see* Backstop Order ¶ E) argued that the Bankruptcy Court should apply Section 1129(a)(4)'s reasonableness requirement to the proposed Backstop Agreements because LATAM sought "to enter into the Backstop Agreements in connection with the Plan."   Bankr. Op. 83.   Similarly, Appellants argued that "the Backstop Agreements should not be approved because they support a Plan structure that violates the equal treatment requirements of section 1123(a)(4) of the Bankruptcy Code," Bankr. Op. 29, which governs the required contents of a Chapter 11 reorganization plan, *see* 11 U.S.C. § 1123(a)(4).   Appellants renew both arguments on appeal.   *See* ECF No. 47 ("Appellants' Merits Mem."), at 28-33 (arguing that the Bankruptcy Court should have reviewed the fees in the Backstop Agreements under the Section 1129(a)(4) reasonableness standard); *id.* at 35-36

(arguing that, "[i]n addition to violating section 1129(a)(4), payment of the Fees also violates section 1123(a)(4)"); ECF No. 45 ("Columbus Hill's Supp. Merits Mem."), at 1 n.3 (joining "Appellants' brief . . . to the extent it argues that . . . the Bankruptcy Court erred in failing to apply section 1129(a)(4) of the Bankruptcy Code in determining whether the fees to be paid under the Backstop Agreements are reasonable").  And it appears at least some of the Appellants have raised these issues once again in their objections to the Plan, which they filed in advance of the upcoming confirmation hearing.  *See, e.g.*, ECF No. 44-1, at 44-50 (arguing the "[f]ees [p]ayable [u]nder the Plan [c]ontravene Section 1129(a)(4)"); ECF No. 44-2, at 11-14 (arguing the "Plan [v]iolates Section 1129(a)(4) . . . by [p]roviding [u]nreasonable [f]ees"); *id.* at 9-11 (arguing the "Plan [v]iolates Section 1123(a)(4)").  These Chapter 11 issues raised by Appellants below, on appeal, and again in advance of the confirmation hearing reinforce the conclusion that the disputes addressed by the Backstop Order are inextricably intertwined with — rather than "discrete" from — the Chapter 11 plan confirmation proceedings.  *Ritzen*, 140 S. Ct. at 586.

Notably, the Court's conclusion on that score is consistent with what courts have concluded in similar circumstances.  For example, in *In re Peabody Energy Corp.*, ("*Peabody*"), the Eighth Circuit Bankruptcy Appellate Panel held that a bankruptcy court order approving a backstop agreement was not final and, thus, *sua sponte* dismissed the appeal.  No. 17-6002, ECF No. 2371, at 1-3 (B.A.P. 8th Cir. Feb. 8, 2017).  The Panel noted that, as here, the appellants sought to appeal based on Chapter 11 plan confirmation issues and "[t]he bankruptcy court and the parties ha[d] substantial obligations left to perform before confirmation of a plan."  *Id.* at 2.  As such, the Panel concluded that "the Order clearly did not finally resolve any distinct segment of the underlying bankruptcy proceeding."  *Id.*  So too, in *Bank of New York Mellon Trust Co., N.A. v. Energy Future Holdings Corp.*, ("*Energy Future*"), the United States District Court for

the District of Delaware held that a bankruptcy court order authorizing a plan support agreement was not final in large part because, as here, "voting on approval" of the proposed plan was "going on . . . in parallel" and appellants sought to raise Chapter 11 issues related to confirmation of the plan.  No. 15-CV-885 (RGA) (D. Del. June 24, 2016), ECF No. 33, at 45-47; *see also In re Residential Cap., LLC*, No. 12-12020, 2013 WL 3286198, at \*5 (Bankr. S.D.N.Y. June 27, 2013) (characterizing a bankruptcy court order authorizing a plan support agreement as non-final because there was "no assurance that the Court will approve a reorganization plan on the terms provided in the [agreement]"); *cf. In re Energy Future Holdings Corp.*, 949 F.3d at 817-18 (holding that an order establishing a bar date was "not final and appealable" because "the bar date dispute . . . was intertwined with and directly concerned, the claims processing provided by the plan confirmation").

Second, the Bankruptcy Court did not "definitively resolve" the disputes that Appellants now seek to appeal.  *Ritzen*, 140 S. Ct. at 586; *see also Sletteland*, 2 F. App'x at 228 (noting that "[f]or a bankruptcy court order to be final" it must "*completely resolve* all of the issues pertaining to a discrete claim" (emphasis added)).  To the contrary, the Bankruptcy Court explicitly reserved judgment on Appellants' Chapter 11 arguments.  *See* Backstop Order ¶ E, ¶ 4; Bankr. Op. 29.  In particular, the Backstop Order stated that Appellants' objections based on Section 1123(a)(4) (and Appellant Columbus Hill's objection under Section 1129(a)(11) on the ground that the Backstop payments violate Chilean law) were overruled "without prejudice" to renewal "in connection with the Plan confirmation."  *See* Backstop Order ¶ E, ¶ 4; *see also* Bankr. Op. 29.  And the Bankruptcy Court's Memorandum Decision stated that Section 1129(a)(4), while "not relevant" to the motion before it, "must be satisfied to confirm a chapter 11 plan," Bankr. Op. at 83 — indicating that Appellants could likewise renew their Section

16

1129(a)(4) arguments in connection with Plan confirmation.  Because the Bankruptcy Court, in issuing its decision and order, expressly left open central disputes that Appellants now seek to appeal, the Backstop Order does not qualify as "final" within the meaning of 28 U.S.C. § 158(a)(1).  *Ritzen*, 140 S. Ct. at 591; *see also, e.g.*, *Peabody*, No. 17-6002, at 2-3 (holding that an order approving a backstop agreement "did not finally resolve any distinct segment of the underlying bankruptcy proceeding" because, *inter alia*, "issues raised in this appeal can be preserved and reviewed as part of an appeal of a confirmation order"); *In re MF Glob. Holdings, Ltd.*, 2012 WL 4763087, at *4 (holding that an order was "not a final order within the meaning of Section 158(a)" because it "leaves . . . open for later determination" part of the dispute); *In re MSR Resort Golf Course LLC*, 2015 WL 5172956, at *1 (same).

Finally, "pragmatic considerations" weigh heavily against a finding of finality.  *In re Lehman Bros. Holdings Inc.*, 697 F.3d at 77.  The Bankruptcy Court is only one week away from holding the confirmation hearing for LATAM's proposed Plan, *see* ECF No. 6, at 11, during which Appellants can renew their Chapter 11 arguments in accordance with the explicit terms of the Bankruptcy Court's decision, *see* Backstop Order ¶ 4; Bankr. Op. 29, 83-84.[4]  Reviewing the Backstop Order on appeal concurrently with the Plan confirmation proceedings would likely cause the very "delays and inefficiencies" that the rule of finality was designed to prevent. *Bullard*, 575 U.S. at 504 ("[E]ach climb up the appellate ladder and slide down the chute can take more than a year.  Avoiding such delays and inefficiencies is precisely the reason for a rule of finality."); *see also In re Bethlehem Steel Corp.*, 2003 WL 21738964, at *3 (noting "the general aversion to piecemeal appeals" guides the finality inquiry even in the bankruptcy context

---

[4]      Indeed, as noted, some Appellants appear to have already renewed these arguments in their Objections to the Plan filed before the Bankruptcy Court in advance of the confirmation hearing.  *See, e.g.*, ECF No. 44-2, at 9-14.

(quoting *In re Chateaugay Corp.*, 922 F.2d at 90); *see also, e.g.*, *Energy Future*, No. 15-CV-885 (RGA), ECF No. 33, at 5 (noting that "voting on approval" of the proposed plan was happening "in parallel," and concluding that the order approving the backstop agreement was "not final"). Accordingly, based on the foregoing, the Court concludes the Backstop Order is not "final" within the meaning of 28 U.S.C. § 158(a)(1).

Appellants' counterarguments fail to persuade. For starters, Appellants are wrong to suggest that *Ritzen* is "dispositive" here. Appellants' Opp'n 3; *see also id.* at 7-10. The question presented in *Ritzen* was whether "a creditor's motion for relief from the automatic stay" under 11 U.S.C. § 362(a) — which applies to a creditors' debt-collection efforts outside of the bankruptcy case — "initiate[s] a distinct proceeding terminating in a final, appealable order when the bankruptcy court rules dispositively on the motion." 140 S. Ct. at 586. The Court held that where a bankruptcy court order "unreservedly grants or denies relief" from the "automatic stay" under 11 U.S.C. 362(a), it is a "final, appealable order." *Id.* As LATAM points out, however, Appellants did not object to the portion of the Backstop Order that modified the automatic stay. *See* LATAM's Reply 5. Nor did they identify it as an issue to be reviewed on appeal, *see id.* at 5 & n.8, or raise it in their brief on the merits, *see generally* Appellants' Merits Mem.; Columbus Hill's Supp. Merits Mem. Appellants have therefore waived any arguments on appeal as to that portion of the Order, *see, e.g.*, *In re Best Payphones, Inc.*, 432 B.R. 46, 60 (S.D.N.Y. 2010) (collecting cases recognizing waiver), *aff'd*, 450 F. App'x 8 (2d Cir. 2011) (summary order). And the Court need not and does not reach whether an appeal from that portion of the Backstop Order would satisfy the finality requirement.

In any event, even if the Court were to reach that question, *Ritzen* is distinguishable. Here, unlike in *Ritzen*, there was no "motion for relief from the automatic stay"; nor was there a

"distinct proceeding" on that issue.  *Ritzen*, 140 S. Ct. at 586; *see also id.* at 587 (noting that

"Ritzen filed a motion in the Federal Bankruptcy Court for relief from the automatic stay" under

11 U.S.C. § 362(d) "seeking an order allowing [a pre-existing and related] trial to proceed in

state court" and that the bankruptcy court held a hearing on the motion before denying it).

Moreover, unlike the order in *Ritzen*, the Backstop Order here does not "unreservedly grant[] or

den[y]" any motion with respect to the automatic stay.  *Id.* at 586.  Instead, it merely "modified"

the automatic stay "to the extent necessary to enable each of the Backstop Commitment Parties

to perform under the applicable Backstop Agreement and, in each case, to exercise any and all of

their contractual rights thereunder, without seeking further relief from the automatic stay."

Backstop Order ¶ 7.  *Ritzen*'s holding regarding orders granting or denying motions for relief

from the automatic stay is thus plainly distinguishable.

　　　　Appellants' additional arguments based on *Ritzen* also miss the mark.  They contend that

the "criteria" for finality identified in *Ritzen* "are satisfied here," Appellants' Opp'n 8, because

the Backstop Order "is the product of a discrete procedural sequence," involving notice and a

hearing; "it applies a statutory standard governing the relief sought; and it does not involve

merely minor details," *id.* at 3, 8-9.  To be sure, the *Ritzen* Court did discuss these features of the

bankruptcy court order at issue (and the proceeding that it terminated) in its finality analysis.  *See*

140 S. Ct. at 589-90.  But the Court did not characterize those considerations as definitive

"criteria."  Nor did it suggest that all bankruptcy court orders that follow notice and a hearing,

resolve issues under a statutory standard, and involve non-minor issues are final.  *See id.*

Instead, the Court found these considerations relevant, in the context of that case, to determining

whether the "bankruptcy court's order ruling on a stay-relief motion dispose[d] of a procedural

unit anterior to, and separate from, claim-resolution proceedings."  *Id.* at 589.   As detailed

above, here, the proceedings that culminated in the Backstop Order were not "anterior to, and separate from," the plan confirmation proceedings, *id.*, but rather "intertwined with and directly" related to those proceedings, *In re Energy Future Holdings Corp.*, 949 F.3d at 817-18.  If anything, therefore, *Ritzen* supports LATAM's arguments, not Appellants'.  *See, e.g.*, *id.* (applying *Ritzen* and concluding order was not final).[5]

Likewise, Appellants' arguments based on Sections 363 and 503 — although arguably their strongest — are ultimately unavailing.  *See* Appellants' Opp'n 8-10.  Appellants make a reasonable case for the proposition that the Backstop Order "conclusively resolved" LATAM's "entitlement to the requested relief" under Sections 363 and 503.  *Ritzen*, 140 S. Ct. at 591.  And pursuant to the Bankruptcy Court's holdings under Sections 363 and 503, LATAM has already begun paying the Expense Reimbursements and will have to make a Termination Payment of some amount regardless of whether the proposed Plan is ultimately confirmed.  *See* CC Backstop Agreement §§ 3.3, 9.2; RSA Shareholders Backstop Agreement § 3.1.  Had the disputes below involved only Section 363 and 503 issues, and had Appellants chosen to appeal based only on Section 363 and 503 grounds, the Court might well have reached a different conclusion with respect to finality.  But Appellants chose to appeal and focus almost exclusively on the Chapter 11 issues, which, as noted, the Bankruptcy Court explicitly left open.  *See* Appellants' Merits

---

[5]     Appellants are also wrong in suggesting that "pre-*Ritzen*" finality decisions are necessarily suspect.  *See* Appellants' Opp'n 11.  In *Ritzen*, the Supreme Court merely clarified and provided further guidance on the final order analysis.  The general standard — under which "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case" — dates back to at least the 1980s.  *Bullard*, 575 U.S. at 501 (citing *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 & n.3 (2006) (citing *In re Saco Local Development Corp.*, 711 F.2d 441, 444 (1st Cir. 1983) (Breyer, J.)); *see also, e.g.*, *In re Hooker Invs., Inc.*, 937 F.2d 833, 837 (2d Cir. 1991) ("[Bankruptcy] orders are appealable as final only if they finally dispose of discrete disputes within the larger case." (internal quotation marks omitted)).

Mem. 28-36, Bankr. Op. 29; Backstop Order ¶ 4.  And Appellants did not ask the Court to parse

the different disputes and associated portions of the Backstop Order with respect to the finality

analysis.  *Cf. In re Olympic Prop. Partners, LLC*, 566 B.R. 334, 338 (S.D.N.Y. 2017) (finding

finality where the appellant was "not appealing from [certain] part[s] of the Bankruptcy Order").

The Court declines on its own to "slic[e]" the order "[so] thin[ly]."  *Bullard*, 575 U.S. at 502.

      Finally, Appellants do not substantiate their claim that the objections they seek to make

on appeal must be raised "now or never."  Appellants' Opp'n 4; *see also id.* at 11.  The only

precedent Appellants cite for that proposition is *Ritzen*.  *See* Appellants' Opp'n 10-11

("[LATAM] contend[s] that Appellants should wait until later (*i.e.*, after confirmation of their

Plan) to appeal the issues resolved in the Order, but that it [sic] exactly what the Supreme Court

[in *Ritzen*] directed that an appellant *may not do*.").  In *Ritzen*, however, the movant had failed to

appeal a decision that the Supreme Court concluded was a final order.  140 S. Ct. at 591.  It does

not necessarily follow that, if this Court were to conclude the decision is *not* final, Appellants

would be forever barred from appealing the issues they seek to raise here post-confirmation.

Indeed, the fact that Appellants appear to have raised many of the same arguments in their

pending objections to the Plan belies their argument.  *See, e.g.*, ECF No. 44-1, at 32, 35-40, 44-

50; 44-2, at 9-13; ECF No. 44-3, at 15.  If the Bankruptcy Court does enter a confirmation order,

that order will certainly be final and appealable.  *See In re Am. Preferred Prescription, Inc.*, 255

F.3d 87, 92 (2d Cir. 2001) ("The confirmation of a plan in a Chapter 11 proceeding is an event

comparable to the entry of a final judgment in an ordinary civil litigation."); *cf. Cmty. Bank, N.A.*

*v. Riffle*, 617 F.3d 171, 173 (2d Cir. 2010) (holding that "a confirmation order" of a Chapter 13

plan "is a final order that may be appealed").  Conversely, if the Bankruptcy Court denies

confirmation of the Plan, most of the substantive commitments laid out in the Backstop

Agreements will never become effective.  *See* CC Backstop Agreement §§ 7.1(a), 7.1(c), 7.3(d);

RSA Shareholders Backstop Agreement §§ 7.1(a), 7.1(c), 7.3(d); *see also* Bankr. Op. 21, 23;

LATAM's Mem. 10.  As for the obligations that would remain in effect — most notably, the

Expense Reimbursements and the Termination Payment, *see* CC Backstop Agreement §§ 3.3,

9.2; RSA Shareholders Backstop Agreement § 3.1; Backstop Order ¶ 6 — Appellants may, at

that time, be able to appeal the associated portions of the Backstop Order on the grounds that

those portions would then be final.  *Cf. Cmty. Bank*, 617 F.3d at 174 (holding that, even

"[a]ssuming that an appeal of the district court's order . . . would have been premature had the

[debtor's] Chapter 13 plan not already been confirmed," the appeal was "ripe at the time it was

taken" because "the bankruptcy court had entered a final order by the time of the appeal").[6]  In

any event, when viewed in light of the full scope of the issues Appellants do seek to appeal —

most of which are part and parcel of the ongoing Chapter 11 disputes, *see* Appellants' Merits

Mem. 28-37 — these provisions of the Backstop Agreements do not convert the entirety of the

Backstop Order into a final order for the reasons discussed above.

In sum, the Court concludes that the Backstop Order is not final and, thus, that Appellants

are not entitled to an appeal as of right.  *See* 28 U.S.C. § 158(a)(1).

## B.  Leave to Appeal the Backstop Order as an Interlocutory Order

Appellants' alternative argument — that the Court should exercise its discretion and grant

them leave to appeal the Backstop Order as an interlocutory order under 28 U.S.C. § 158(a)(3)

— requires comparatively little discussion.  As noted, courts this Circuit generally apply the

standard for certifying an interlocutory appeal set forth in 28 U.S.C. § 1292(b) to determine

---

[6]     To be clear, the Court reserves judgment on whether, following a denial of Plan
confirmation, the Court would have jurisdiction to entertain an appeal from the operative
portions of the Backstop Order.

whether to exercise discretion under 28 U.S.C. § 158(a)(3).  *In re MF Glob. Holdings, Ltd.*, 2012 WL 4763087, at *3 (collecting cases).  Under Section 1292(b), leave to appeal should be granted only if the relevant order (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "This standard is strictly applied as interlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit," and "[a]ll three § 1292(b) criteria must be met before a court may grant leave to appeal."  *In re Liddle & Robinson, LLP*, 2020 WL 4194542, at *4 (internal quotation marks omitted).

Here, it is doubtful Appellants satisfy any of the three prongs, but they plainly fail on the third.  Resolving the Chapter 11 issues raised by Appellants on appeal before the Bankruptcy Court has even had a chance to meaningfully consider, let alone resolve, them would not "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  And, conspicuously, Appellants do not identify any reason why appellate review of the disputes *now*, as opposed to after the Bankruptcy Court has considered them in connection with confirmation of the Plan, would benefit the bankruptcy court proceedings.  *See* Appellants' Opp'n 16; *see also* LATAM's Reply 10.  The Court therefore declines to exercise its discretion to grant Appellants leave to appeal the Backstop Order as an interlocutory order.

## CONCLUSION

The arguments that Appellants raise in this appeal are far from frivolous — although, to be clear, the Court intimates no views on how they should be resolved.  For the reasons stated above, that is (or may be) a task for another day — after the Bankruptcy Court has ruled on them and/or issued a decision on whether or not to confirm the Plan.  Accordingly, LATAM's motion

to dismiss this appeal for lack of jurisdiction is GRANTED.  The Clerk of Court is directed to

close the case and to terminate ECF Nos. 12 and 42.

       SO ORDERED.

Dated: May 10, 2022
      New York, New York

JESSE M. FURMAN
United States District Judge